UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PRIME INSURANCE COMPANY,
AN ILLINOIS CORPORATION,

    Plaintiff,

v.

MEDICAB TRANSPORTATION, LLC; JASON RHODES; DALE JOHNSON; and ESTATE OF MARGARET ST. AUBIN, BY AND THROUGH MARK ST. AUBIN, PERSONAL REPRESENTATIVE,

    Defendants,
_____/

Case No. 2:24-CV-421-SPC-KCD

## ORDER

Before the Court is Plaintiff Prime Insurance Company's Motion for Protective Order/Motion to Quash Non-Party Subpoenas. (Doc. 61.)[1] The subpoena targets have also filed motions seeking the same relief. (Docs. 66, 68, 77.) Defendant Estate of Margaret St. Aubin opposes any request to limit or quash the subpoenas. (Doc. 74.) For the reasons below, the motions are **GRANTED IN PART AND DENIED IN PART**.

### I. Background

This lawsuit seeks to resolve whether Prime Insurance Company owes coverage to its insured, Defendant Medicab Transportation. (*See* Doc. 11.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

According to the complaint, "Margaret St. Aubin was on a lift being unloaded from a Medicab van when she . . . fell and injured her back." (*Id.* ¶ 9.) Aubin (now deceased and represented by her estate) has filed a personal injury action in state court. Prime seeks a declaratory judgment that "there is no coverage under the Prime Commercial Liability Policy for [Aubin's] claim." (*Id.* ¶ 33.)

Medicab has filed several counterclaims against Prime. (Doc. 17.) The gist of its claims is that Prime, "with assistance from its related affiliate/subsidiary companies . . . and its legal team," fraudulently "rewrote and modified the commercial general liability policy to remove $1,000,000 of insurance coverage." (Doc. 74 at 2-3.) According to Medicab, its commercial policy contained "Paratransit services liability coverage" at the time of Aubin's accident. (Doc. 17 ¶ 59.) But through a series of misrepresentations, Prime amended the policy and cancelled that coverage.

Pertinent here, Aubin has subpoenaed "attorneys, claim handlers, litigation adjusters, representatives, and agents of Prime." (Doc. 61 at 3.) The subpoena targets are:

- Strong & Hanni, PC—Prime's outside legal counsel
- Sastre, Saavedra, & Epstein, PPLC—Prime's outside legal counsel
- Evolution Insurance Brokers, LC—Prime's insurance brokerage

- Prime Holdings Insurance Services, Inc. d/b/a Claims Direct Access—Prime's claims handler

(Doc. 61-1.)[2] Prime now "moves for a protective order and to quash [these] non-party subpoenas." (Doc. 61 at 1.) The subpoena targets have also filed nearly identical motions. (Docs. 66, 68 & 77.)

## II. Discussion

Prime and its affiliates seek two forms of relief: an order quashing the subpoenas under Fed. R. Civ. P. 45, or alternatively, a protective order under Fed. R. Civ. P. 26. (*See, e.g.*, Doc. 61 at 9-18.)

**1. Motion to Quash**

The Court need not spend long here because this relief is unavailable. Federal Rule of Civil Procedure 45 governs the subpoena process and its parameters. Rule 45 distinguishes between an "issuing court" and the "court of compliance." *See* Fed R. Civ. P. 45(a)(2), (c)(2)(A). A subpoena must be issued by the court where the underlying action is pending. But "the district court with jurisdiction to enforce and to quash subpoenas is the court for the district where compliance is required." *Narcoossee Acquisitions, LLC v. Kohl's Dep't Stores, Inc.*, No. 6:14-CV-203-ORL-41TB, 2014 WL 4279073, at *1 (M.D. Fla. Aug. 28, 2014).

---

[2] This exhibit is not consecutively paginated. The Court thus refers to the page numbers generated by its electronic filing system.

3

The subpoenas here require the production of documents in Salt Lake City, Utah and Weston, Florida. (Doc. 61-1.) Both these locations are outside the Middle District of Florida. Thus, this Court "lacks the jurisdiction to quash th[ese] subpoena[s]." *Bernath v. Seavey*, No. 2:15-CV-358-FTM-99CM, 2017 WL 11025770, at *2 (M.D. Fla. May 9, 2017); *see also Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 6:16-CV-366-PGB-LHP, 2022 WL 1239237, at *1 (M.D. Fla. Feb. 16, 2022); *Starr Indem. & Liab. Co. v. CSX Transp., Inc.*, No. 3:14-CV-1455-J-39JBT, 2015 WL 12862918, at *1 (M.D. Fla. Sept. 29, 2015).

The geographical limits of Rule 45(d)(3) do not apply to the movants' request for a protective order, which is where the Court turns now. *See* Fed. R. Civ. P. 26(c)(1) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]").

### 2. Protective Order

Upon a showing of good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A protective order can include, among other things, "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" *Id.* "This Court has previously held that parties have standing to move for a protective order" against a Rule 45 subpoena. *Lesniak v. Geico Gen. Ins. Co.*, No. 2:19-CV-494-FTM-60MRM, 2020 WL 5878022, at *3 (M.D. Fla. Apr. 17, 2020).

Protective orders are not lightly granted because they contravene the general breadth allowed for discovery. Thus, while "courts have broad discretion in fashioning discovery rulings," they still "are bound to adhere to the liberal spirit of the Federal Rules." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021). "The party requesting a protective order must make a specific demonstration of facts in support of the request, rather than conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *New World Network Ltd. v. M/V NORWEGIAN SEA*, No. 05-22916 CIV, 2007 WL 1068124, at *1 (S.D. Fla. Apr. 6, 2007).

Prime and its affiliates first argue that a protective order is necessary because the subpoenas target irrelevant information. At issue in this declaratory judgment action, they say, is "whether Prime's general liability policy is applicable to the claims asserted by [A]ubin" in the negligence action. (Doc. 61 at 5.) The subpoenas, however, seek "confidential, claims handling, attorney client privileged and work-product documents" that have no relationship to resolving the scope of the policy. (*Id.* at 4.) As the movants put it, Aubin is "attempt[ing] to obtain premature bad faith discovery[] and infringe on the attorney client privilege." (*Id.* at 6.)

The Court might find this relevancy argument convincing if the dispute were a simple declaratory judgment action. But the case is much more. As

5

mentioned, Medicab claims that Prime fraudulently changed the underlying insurance policy to avoid covering Aubin's accident. (Doc. 17.) And according to the pleadings, Prime was aided by its agents and outside counsel, who are the subpoena targets. (*See id.* ¶¶ 35, 38, 61.) Aubin argues, and the Court agrees, that the subpoenas seek information relevant to the alleged fraud. For instance, the subpoena to Strong & Hanni, PC seeks "correspondence, communications, and documents, and writings . . . pertaining or referring to the General Change Endorsement PAP-99-16 dated July 27, 2022." (Doc. 61-1 at 18.) This request falls squarely within the heart of Medicab's counterclaims. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]").

But there is a problem. The subpoenas are nearly boundless. They seek, among other things, every document or communication "pertaining or referring to Prime Property & Casualty Insurance Company insurance policy number PC21050897 issued to Medicab Transportation, LLC (from inception of the policy to present)." (Doc. 61-1 at 15.) Literally construed, this request calls for every scrap of paper and electronic record concerning the underlying insurance policy, no matter its relevance. The overbreadth is obvious. Each subpoena also has over 60 requests, many of which overlap substantially. As other courts have recognized, even if a subpoena targets relevant

information, that does not condone a blanket request for "all documents . . . related to the accident, claim, [or] resulting lawsuit." *McMullen v. GEICO Indem. Co.*, No. 14-CV-62467, 2015 WL 2226537, at *8 (S.D. Fla. May 13, 2015). Aubin has seemingly made no effort to tailor the subpoenas to the issues in the case and the relevant information each target may possess. Indeed, the Court is hard-pressed to imagine broader discovery. *Cf. Cadle v. GEICO Gen. Ins. Co.*, No. 6:13-CV-1591-ORL-31-GJK, 2014 WL 12621189, at *3 (M.D. Fla. May 28, 2014) (precluding subpoena that sought all documents regarding an underlying lawsuit because the defendant "made no effort to tailor the [s]ubpoena to the issues in the case").

What is more, much of the information sought is presumably available from Prime. "[A] district court has discretion to modify or quash a subpoena if it seeks discovery that is . . . duplicative, or is obtainable from other source[s]." *Bogus v. City of Birmingham, Ala.*, No. 2:17-CV-00827-TMP, 2019 WL 13268139, at *3 (N.D. Ala. Mar. 7, 2019). Since the subpoena targets are either "affiliate[s]/subsidiar[ies]" or "counsel for Prime," it should have "control" of the documents requested. *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D. Fla. 2011). "[I]n an effort to spare third parties the expense and cost of responding to [a] subpoena," the movant "ought to first attempt to obtain such evidence directly from [the opposing party] pursuant to other available avenues under the Federal Rules of Civil Procedure."

7

*Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05CV1056-J-32MCR, 2006 WL 1627020, at *4 (M.D. Fla. June 6, 2006).

This is not to say Aubin is forever barred from pursuing documents from Prime's outside counsel or affiliates. As mentioned, some of the information sought is germane to Medicab's fraud claims. But the burden is on Aubin to appropriately align her requests with the governing discovery principles. A protective order is appropriate here because the subpoenas are overbroad, responding to them would be unduly burdensome, and many areas of inquiry are not proportional to the claims before the Court. *See, e.g.*, *Westchester Surplus Lines Ins. Co. v. Portofino Masters Homeowners Assoc., Inc.*, 347 F.R.D. 228 (N.D. Fla. 2024).

Accordingly, it is **ORDERED**:

1. Prime's Motion (Doc. 61), Strong & Hanni PC's Motion (Doc. 66), Evolution Insurance Brokers, LC and Prime Holdings Insurance Services, Inc.'s Motion (Doc. 68), and Sastre, Saavedra, & Epstein, PLLC's Motion (Doc. 77) are **GRANTED IN PART AND DENIED IN PART**:

    a. The Court issues a protective order to quash the subpoenas issued to Strong & Hanni, PC; Sastre, Saavedra, & Epstein, PPLC; Evolution Insurance Brokers; and Prime Holdings Insurance Services, Inc. (Doc. 61-1);

    b. All other relief sought is denied.

**ENTERED** in Fort Myers, Florida on November 6, 2024.

Kyle C. Dudek
United States Magistrate Judge