# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| PRIME INSURANCE COMPANY, a Utah corporation | )<br>)<br>) |
| *Plaintiff/Counter-Defendant,* | ) Case No. 2:2024cv00421<br>) |
| v. | ) Judge Sheri Polster Chappel<br>) Magistrate Judge Kyle C. Dudek |
| MEDICAB TRANSPORTATION, LLC; JASON RHODES; DALE JOHNSON; and ESTATE OF MARGARET ST. AUBIN, by and through MARK ST. AUBIN, Personal Counsel, | )<br>)<br>)<br>)<br>) |
| *Defendants/Counter-Plaintiffs* | ) |
| v. | ) |
| PRIME PROPERTY & CASUALTY INSURANCE COMPANY, an Illinois Corporation; and PRIME HOLDINGS INSURANCE SERVICES, INC., an Illinois Corporation, dba CLAIMS DIRECT ACCESS | )<br>)<br>)<br>)<br>)<br>) |
| *Third-Party Defendants* | ) |

## DEFENDANTS' OPPOSITION TO PRIME INSURANCE COMPANY'S MOTION TO DISMISS AMENDED COUNTERCLAIMS

Defendants, Medicab Transportation, LLC ("Medicab"), Dale Johnson ("Johnson"), and Jason Rhodes ("Rhodes"), collectively (the "Medicab Defendants"), by and through their undersigned counsel, hereby file their

Memorandum in Opposition to Prime Insurance Company's ("Prime") Motion to Dismiss ("Motion") the Medicab Defendants' Amended Counterclaims ("Amended Counterclaim") as follows:

## INTRODUCTION

This case arises from the concerted fraudulent actions of Prime and its sister company, Prime Property & Casualty Insurance Company ("PPCI"), carried out through their parent and holding company, Prime Holdings Insurance Services, Inc., doing business as Claims Direct Access ("CDA" in Utah). The joint efforts of Prime and PPCI, through CDA, were to reduce post-accident Medicab's available insurance coverage for an accident that occurred on September 21, 2021, while Medicab was performing paratransit services. The structure of Prime and PPCI acting through CDA for claims adjustment and investigation exemplifies a classic agent-principals relationship, a well-established legal doctrine in Florida. *See Old Republic Ins. Co. v. Von Onweller Const. Co.*, 239 So. 2d 503 (Fla. Dist. Ct. App. 1970) ("The acts of an adjuster … are binding on the company"). Notably, despite filing multiple motions to dismiss, Prime has neither denied nor disputed the core allegations made by the Medicab Defendants.[1] Instead, as outlined below, Prime relies on mischaracterizations of the claims, asserting—contrary to this Court's

---

[1] CDA's role as the claims adjustor and agent for both Prime and PPCI is consistent with the corporate structure, as Prime and PPCI are subsidiaries of CDA. This agent/principals relationship was recently admitted to by David McBride in sworn testimony in another matter.

prior Order—that the invocation of an agent-principals relationship renders the counterclaims and third-party complaints impermissible shotgun pleadings. This assertion is both legally and factually incorrect, and the Medicab Defendants' pleading properly articulates actionable claims against Prime, PPCI, and CDA.

In response to Prime's Second Amended Complaint [DE 11], the Medicab Defendants filed a Counterclaim and Third-Party Complaint against Prime and PPCI on July 15, 2024 (the "First Counterclaim"). [DE 17]. Both Prime and PPCI moved to dismiss the First Counterclaim, and this Court granted their motions, dismissing it without prejudice as a shotgun pleading (the "Order"). [DE 79].

In its Order, the Court noted that the Medicab Defendants had not provided an explanation regarding the affiliation between Prime, PPCI, and CDA. [DE 79 at 5 n. 4]. However, between the filing of the First Counterclaim and the Amended Counterclaim, counsel for the Medicab Defendants deposed David McBride, alleged in the Amended Counterclaim to be the Executive Vice-President and Corporate Attorney for CDA, in connection with a separate lawsuit. As a result of this deposition, the Medicab Defendants' allegations have been confirmed. CDA is a holding company that owns multiple subsidiary companies, including Prime and PPCI. CDA provides exclusive employment and claims adjustment services for its subsidiaries, confirming the agent/principals relationship alleged in the Amended Complaint.

The Medicab Defendants filed their Amended Counterclaim on December 20, 2024. [DE 80]. The Medicab Defendants complied with the Court's Order by refraining from adopting and incorporating all preceding allegations into each claim, pleading facts sufficiently, properly incorporating necessary paragraphs to meet required pleading standards, amending the contract claims to be brought against Prime only, and clarifying the relationship between CDA and its subsidiaries, Prime and PPCI. Despite these changes, Prime again requests the Court to dismiss the Amended Counterclaim as a shotgun pleading. [DE 81 at ¶ 3].

However, the Court should deny Prime's Motion. First, asserting claims against Prime, PPCI, and CDA based upon agency does not constitute a shotgun pleading. The acts or omissions alleged in each claim were made by a common agent (CDA) and are, therefore, attributable to each entity equally. "The fact that [Prime, PPCI, and CDA] are accused collectively does not render the complaint deficient" so long as "[t]he complaint can be fairly read to aver that all [entities] are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

Second, Prime's assertion that the Fourth, Fifth, and Sixth Causes of Action do not comply with pleading standards should be disregarded. Such deficiencies, if present, do not constitute a shotgun pleading. *See Norris v. Honeywell Int'l, Inc.*,

No. 8:22-CV-1675-CEH-TGW, 2023 WL 6256183, *3 (M.D. Fla. Sept. 26, 2023). Regardless, these causes of action do meet the pleading requirements under Rule 8 and Rule 9(b), as each claim alleges and incorporates paragraphs detailing the dates, individuals, and content of the relevant correspondences that establish the alleged misconduct.

Third, the Second Counterclaim's First, Second, and Third Causes of Action should not be dismissed as a shotgun pleading, even if the other causes of action are dismissed. Each of these claims gives sufficient notice to Prime of the allegations against it. Thus, Prime's Motion should be dismissed in its entirety.

## ARGUMENT

In analyzing a 12(b)(6) motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the Counterclaim. *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 20009), *abrogated by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 132 S. Ct. 1701 (2012). "On a motion to dismiss, the burden is upon the moving party to show to a certainty that the plaintiff is not entitled to relief." *Empire Indem. Ins. Co. v.* Winsett, 2007 WL 9735051 (N.D. Fla. Aug. 24, 2007) (citing *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1581 (11th Cir. 1986)). Accordingly, when determining whether to grant a motion to dismiss, a court must assume the truth of the allegations in the pleadings and draw all reasonable inferences from those allegations in favor of the non-moving party. *Gates v.*

*Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). Applying this standard, Prime's Motion to Dismiss must be denied.

## I. THE MEDICAB DEFENDANTS' FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION ARE NOT SHOTGUN PLEADINGS.

### A. THE CAUSES OF ACTION PROVIDE PRIME WITH ADEQUATE NOTICE.

Prime attempts to characterize the Fourth (Breach of Fiduciary Duty), Fifth (Misrepresentation and Nondisclosure), and Sixth (Negligent Misrepresentation and Nondisclosure) Causes of Action as the fourth type of shotgun pleading identified in *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015). However, this characterization is incorrect. Each of the counts allege—or incorporate particular paragraphs that allege—the existence and purpose of the arrangement involving CDA's employees and officers acting simultaneously as agent for both Prime and PPCI to perform claims adjustment services. Thus, the actions of CDA's employees and officers specifically alleged are attributed to all three entities. Accordingly, the Second Counterclaim provides fair notice to Prime for shotgun pleading purposes.

The fourth type of an impermissible shotgun pleading is "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 1323. Courts disprove this type of shotgun pleading because it makes it "virtually impossible to determine which

factual allegations the plaintiff intends to use against each defendant." *Norris*, 2023 WL at *3 (citing *Worldspan marine In. v. Comerica Bank*, No. 20-11646, 2021 WL 5882006, *2 (11th Cir. Dec. 13, 2021)). However, as this Court noted in its Order, *Wieland* does not prohibit all instances where a count lodges a claim against multiple defendants, "but rather only where such a claim fails to provide defendants with adequate notice of the claims against them." *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1140 (M.D. Fla. 2018). "Therefore, a complaint must allege the acts or omissions attributed to each defendant or it will be found to violate the pleading rules." *Norris*, 2023 WL at *4.

The Medicab Defendants' Fourth, Fifth, and Sixth causes of action allege the acts or omissions attributed to each defendant. First, each count alleges—or incorporate paragraphs that allege—that CDA's officers and employees were assigned to simultaneously perform *all* claims adjustment services on Prime's and PPCI's behalf in handling the injury claim brought by the St. Aubin Estate and therefore the actions and decisions of these individuals were attributable to each. *See* [DE 80 at ¶¶ 107, 113, 120-121]. Second, each claim alleges—and incorporates paragraphs that allege—specific acts or omissions of CDA's officers and employees, attributed to Prime, PPCI, and CDA, under agency law. *See id.* at ¶¶ 106, 108-09, 112, 114, 120-21. These paragraphs are not vague or conclusory statements. Many of these paragraphs include specific dates, the name of the

acting CDA employee or officer, a detailed summary of the substance of the various correspondences, and exhibits containing copies of emails and letters. *Id.*

Prime's attempt to feign confusion is unpersuasive. In fact, despite Prime alleging that it cannot "ascertain … what are the allegations" against it, Prime acknowledges in its Motion that each of the subject claims allege that Prime, CDA, and PPCI acted uniformly through a common agent (CDA) and that each entity should be held accountable for the actions and omissions of their agent. *See* [DE 81 at 9]. Prime has thus demonstrated its ability to understand the claims and factual allegations asserted against it, which is the true test for whether a complaint is a shotgun pleading. The claims are not confusing or unclear. Prime's frustration that it should be held liable for the acts of its agent does not make the subject claims a shotgun pleading.

Additionally, Prime's claim that the Fourth, Fifth, and Sixth causes of action "comingle" allegations amongst "separate and distinct entities" is not only a mischaracterization of the Medicab Defendants' Second Counterclaim, but it is also irrelevant. "Nothing in the pleading rules prohibits lodging the same claim against multiple defendants if they are all alleged to have participated in the same acts rising to the claim." *Whitehurst v. G&A Rest. Mgmt., Inc.*, No. 2:20-CV-67-MRM, 2020 WL 2062462, *2 (M.D. Fla. Apr. 29, 2020) (citing *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) ("When multiple defendants are named in a complaint,

the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually."). Thus, a pleading is not a shotgun pleading if the court finds "[t]he complaint to be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). Here, the acts of an agent, such as an insurance adjuster, is binding on the agent's principals. *Old Republic Ins. Co.*, 239 So. 2d at 504. Thus, the various actions and omissions of CDA's employees and officers alleged in the Second Counterclaim apply to Prime individually. The fact that such allegations equally apply to PPCI is irrelevant. Thus, contrary to Prime's claims, the Medicab Defendants' Second Counterclaim fully comply with this Court's Order, and Prime knows precisely what misrepresentations or other wrongdoings it allegedly made. *See* [DE 79 at 11-12].

Finally, Prime argues that the Medicab Defendants' Second Counterclaim should be dismissed as a shotgun pleading because it fails to plausibly allege sufficient facts to state a claim based on the assertion that Prime, PPCI, and CDA are neither in privity nor parties to each other's respective policies. This argument is legally incorrect because all conduct is alleged against Prime but it also need not be addressed. "[A] deficient complaint is not necessarily a shotgun pleading." *Norris*, 2023 WL at *3. In *Norris*, the court rejected the defendants' argument that the plaintiffs' amended complaint constituted a shotgun pleading due to its

alleged failure to state a claim for which relief could be granted. The court concluded that the document "provides adequate notice to Defendants of the underlying factual allegations … as well as which causes of action each Plaintiff intends to assert." *Id*. The court further noted, "[w]hether the former supports the latter is a separate question." *Id*.

Similarly, in this case, the Second Counterclaim provides adequate notice to Prime, PPCI, and CDA of the underlying factual allegations—that their common agent's acts and omissions were unlawful and attributable to Prime and PPCI. Accordingly, the Court can deny Prime's motion to dismiss the Second Counterclaim as a shotgun pleading.

B. THE CAUSES OF ACTION ARE SUFFICIENTLY PLED WITH DETAILED, NON-CONCLUSORY ALLEGATIONS.

Prime seeks dismissal of the Medicab Defendants' Fourth, Fifth, and Sixth Causes of Action, arguing that the claims fail to state a claim upon which relief can be granted because the Medicab Defendants comingle conclusory allegations and argument of counsel. Prime's claim that "Medicab's claims do not offer any single fact that is not conclusory" is so egregiously inaccurate and wholly unsupported by the record that it raises serious questions as to whether Prime has even reviewed the allegations set forth in the Second Counterclaim. *See* [DE 81 at 21]. Not only do the causes of action summarize the factual allegations supporting each claim, they also incorporate paragraphs detailing dates, individuals, the

substantive nature of correspondence, and 27 attachments containing relevant documents.[2] Regardless of whether Rule 8 or Rule 9(b) applies, the causes of action have been sufficiently pled.

Prime also incorrectly requests that the Court find that the Fourth, Fifth, and Sixth Causes of Action are a shogun pleading because they do not meet pleading standards and therefore fail to state. See [DE 81 at 10-15, 20-21, 23]. However, as explained above, "[A] deficient complaint is not necessarily a shotgun pleading." Norris, 2023 WL at *3. Failure to state a claim and to comply with pleading standards is not a type or category of shotgun pleadings recognized in *Weiland*. *See* 792 F.3d at 1321. Further, despite referencing Rule 8 and Rule 9(b), Prime asks the court to dismiss the Fourth, Fifth, and Sixth Causes of Action solely because they are a shotgun pleading. [DE 81 at 3, 4-18, 23-24]. Thus, the can must ignore Prime's misplaced argument regarding the pleading standards.

Regardless, the Second Counterclaim's Fourth, Fifth, and Sixth Causes of Action are sufficiently pled. Generally, under Rule 8 of the Federal Rule of Civil Procedure, a party must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 955 (2007). However, "[T]he standard simply calls for enough act to raise a reasonable

---

[2] It is important to note that Prime has not alleged that any of the incorporated paragraphs contain immaterial facts not connected to any particular cause of action.

expectation that discovery will reveal evidence of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. However, where a cause of action sounds in fraud under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." To meet this standard, "the complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud." *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 389 F. Supp. 3d 1137, 1143 (S.D. Fla. 2018).

Contrary to Prime's allegations, the Fourth, Fifth, and Sixth Causes of Action satisfy the requirements of Rule 8 and Rule 9(b). To begin, the Medicab Defendants allege that CDA, the parent and holding company to Prime and PPCI, provided all claims adjustment services to Prime and PPCI for the injury claim brought by the St. Aubin Estate. [DE 80 at ¶¶ 9, 107, 113]. The Medicab Defendants identify multiple CDA employees and officers, including Mr. McBride, Brittany Hardin, and David Brown, who acted as agents for and on behalf of Prime and PPCI simultaneously. *Id.* at ¶¶ 11, 36, 39, 107, 109, 113. The Medicab Defendants

also allege specific misrepresentations and omission made by CDA's agents, primarily Hardin, in multiple correspondences between August 1, 2022, and May 18, 2023. These include representations that Medicab's coverage for the underlying accident was limited to $100,000, that acknowledging this limit was in Medicab's best interest, and omissions regarding the creation of false and fraudulent endorsements to retroactively reform Medicab's policies. *Id.* at ¶¶ 41, 44-46, 51-53, 58, 89, 109, 114, 121. As the Medicab Defendants allege, they were misled by these misrepresentations and omissions into unintentionally agreeing to "retroactively reform" its policy with Prime, believing that its premiums paid to Prime did not include liability coverage for Paratransit services, and deciding to take no action in the Utah DJ. *Id.* at ¶¶ 56-57, 116, 121. This benefited Prime, PPCI, and CDA as they, through their common agent (CDA), were able to prepare three endorsements reforming Medicab's policy's language and submit its Utah DJ unopposed, resulting in a default judgment finding that Medicab's limits for the underlying accident are $100,000. *Id.* at ¶¶ 57, 85, 116, 121.

Prime relies on *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006), to broadly allege that merely lumping defendants together in each claim fails to satisfy pleading standards. However, this case is distinguishable from *Lane*. From the outset, it is worth noting that *Lane* does not involve a motion to dismiss a claim for being a shotgun pleading. *See id.*

at *4. Additionally, despite including three individuals and two corporations as defendants, the plaintiff in *Lane* failed to differentiate among the defendants, alleging instead violations by a collective ***defendant*** — singular — and providing no factual basis to distinguish their conduct. *Id*. at *5. Here, the Second Counterclaim clearly differentiate between Prime, PPCI, and CDA. The Medicab Defendants clearly plead that CDA, the parent and holding company of Prime and PPCI, provided all adjustment services simultaneously to Prime and PPCI. [DE 80 at ¶¶ 5, 9]. The Medicab Defendants plead that CDA assigned its employees and officers to perform claims adjustment services for both insurers. *Id*. at ¶¶ 36-37, 39, 107, 113. As a result, CDA, Prime, and PPCI acted uniformly through Prime's and PPCI's common agent. *Id*. The fact that the Medicab Defendants allege that the actions asserted in each claim are attributable to each entity based upon an agency relationship does not mean that they have lumped Prime, PPCI, and CDA together as a single party.

Instead, this case is similar to *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs. Inc.*, 389 F. Supp. 3d 1137 (S.D. Fla. 2018). In *State Farm*, certain defendants, a healthcare clinic and two individuals, alleged that the complaint improperly lumped all the defendants together. *Id*. at 1146. However, the court noted that, while the plaintiff grouped various subsets of the defendants together in each count, "each [d]efendant is specifically identified and the complained of

conduct is pointedly attributed to each [d]efendant." *Id.* at 1146-47. The court specifically found that "[a]lleging multiple defendants are liable for the conduct alleged in each count here is not fatal to [plaintiff's] complaint." *Id.* at 1147. Thus, the court denied dismissing the complaint. *Id.* at 1153. Like in *State Farm*, each claim in the Second Counterclaim that is brought against Prime, PPCI, and CDA specifically identifies each entity and pointedly attributes each act and omission to each respectively, based on undisputed agency relationships. [DE 80 at ¶¶ 9, 36-37, 107, 113, 121]. Thus, like in *State Farm*, the Medicab Defendants' allegations are adequate, at this pleading stage, to establish Prime's, PPCI's, and CDA's involvement with the alleged activity with sufficient particularity.

C. <u>THE FIRST, SECOND, AND THIRD CAUSES OF ACTION SHOULD NOT BE DISMISSED AS BEING A SHOTGUN PLEADING.</u>

Prime contends that the Fourth, Fifth, and Sixth Causes of Action in the Medicab Defendants' Second Counterclaim constitute a shotgun pleading and, as a result, the entire Second Counterclaim should be dismissed. However, Prime provides no authority to support this assertion. See [DE 81 at ¶¶ 15-18]. Instead, Prime merely alleges that all causes of action are "so intertwined" that "Prime is unable to fully put forth a response and affirmative defenses." *Id.* at ¶ 15. This is not true.

This Court's prior Order contradicts Prime's argument. While the Court noted that it could not rule on the Medicab Defendants' misrepresentation claims,

it found that the Medicab Defendants had sufficiently pled breach of contract claims and declaratory judgment claims, stated as the First, Second, and Third Causes of Action. *See* [DE 79 at 19-20, 23, 26]. The Court also summarized the grounds upon which each of these claims rests. *Id*. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323; *see Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a shotgun pleading.") (citations omitted).

Based, on the Court's Order, it is clear that the Medicab Defendants' contract and declaratory judgment claims provide Prime with adequate notice. The sufficient clarity of these claims is underscored by the reality that none of Prime's concerns with the Fourth, Fifth, and Sixth Causes of Action apply to the remaining causes of action. Specifically, the First, Second, and Third Causes of Action are not lodged against multiple defendants, but Prime only. Moreover, the reasons for which the Court found the entirety of the First Counterclaim to be a shotgun pleading have been resolved. No cause of action adopts and incorporates all preceding allegations and counts. Additionally, as acknowledged in the Court's

Order, the Medicab Defendants' contract and declaratory judgment claims are sufficiently pled and therefore not merely conclusory. *See* [DE 79 at 19-20, 23, 26]. Dismissing the Medicab Defendants' First, Second, and Third Causes of Actions as a shotgun pleading would be improper and undermine the very purpose of the rule. Prime's Motion must be denied.

## II. UTAH LAW APPLIES TO MEDICAB DEFENDANTS' CONTRACT AND TORT CLAIMS AGAINST PRIME.

In its Order, the Court directed all parties "to provide the Court with sufficient facts, arguments, and citation to pertinent legal authority … for the Court to determine what law applies to all claims in this case." [DE 79 at 17]. [3]

While sitting in diversity jurisdiction, a federal court must apply the substantive law of the forum state where the court sits. *See Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2011). However, while the court applies the forum state's substantive law, that doesn't always mean the forum state's law governs the claims directly. Instead, the forum state's choice of law rules determine which state's substantive law applies to the claims. In Florida, courts apply the "most significant relationship test" to determine which state's law applies to tort claims. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d

---

[3] The Medicab Defendants agree with Prime that Utah law applies to the Amended Counterclaim's First, Second, and Third Causes of Action. Thus, the Medicab Defendants' Opposition addresses solely the choice of law issue for its tort claims.

999, 1001 (Fla. 1980)). In evaluating which state has the most significant relationship, courts consider the following factors: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered." *Id*. (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). "A court should evaluate these contacts according to their relative importance with respect to the particular issue." *Id*.

Here, the Medicab Defendants' injury resulted from the actions and omissions of CDA, Prime's and PPCI's agent and the sole actor for claim adjustment. CDA, like its subsidiaries PPCI and Prime, has its principal place of business in Utah. [DE 80 at 4-6]. Thus, all of the CDA correspondences with Medicab, that create the factual basis for the Medicab Defendants' tort claims, were sent from Utah. Additionally, the endorsements prepared by CDA, while an agent for both Prime and PPCI, that purport to eliminate Medicab's coverage for Paratransit liability coverage were prepared and executed in Utah. *Id*. Exhibits 11-13 (General Change Endorsements). Moreover, Prime, acting through its agents of CDA, litigated the scope of coverage under both the P&C Liability Policy and the Business Auto Policy in Utah. *Id*. at ¶ 70. Thus, Utah is the situs of the Medicab Defendants' alleged injuries as well as the situs where the conduct causing the

injuries occurred. Finally, the relationship between the parties was centered in Utah. Prime's P&C Liability Policy expressly states that the policy was entered into in the State of Utah and any rights, remedies, or obligations provided for in the policy would be construed and enforced in accordance with Utah laws. *Id*. Exhibit 5 (P&C Liability Policy). The significance of Utah in the parties' relationship is underscored by the P&C Liability Policy Receipt Form which states that Prime conducts its business activities, including claims services by CDA within the State of Utah and that Medicab as the insured, acknowledges that it has purposefully directed its actions, and is transacting business, within the State of Utah. *Id*. Exhibit 6.

Accordingly, Utah law governs the Medicab Defendants' tort claims. Thus, to the extent that Prime's Motion incorrectly relies on Florida law, the Motion should be denied. Regardless, the Medicab Defendants' Amended Counterclaim complies with both Florida and Utah law. Thus, the Court's determination of the choice of law issue is not dispositive of the validity of the Amended Counterclaim.

## CONCLUSION

Based upon the foregoing, Prime's Motion to Dismiss should be denied.

DATED January 24, 2025.

/s/ *Gary D. Rhodes*
Gary D. Rhodes, Esq.
Florida Bar Number: 121653
Henderson, Franklin, Starnes & Holt, P.A.
Attorneys for Medicab Defendants
1715 Monroe Street
P.O. Box 280
Fort Myers, FL  33902
Telephone: (239) 344-1364
gary.rhodes@henlaw.com
jackie.navarrete@henlaw.com

Alan C. Bradshaw, #4801 (*Pro Hac Vice*)
Trent E. Ferrin, #18370 (*Pro Hac Vice*)
**MANNING CURTIS BRADSHAW
 & BEDNAR PLLC**
201 South Main Street, Suite 750
Salt Lake City, UT 84111
(p) 801-363-5678 | (f) 801-364-5678
abradshaw@mc2b.com
tferrin@mc2b.com