UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| PRIME INSURANCE COMPANY, a Utah corporation<br><br>*Plaintiff/Counter-Defendant,*<br><br>v.<br><br>MEDICAB TRANSPORTATION, LLC; JASON RHODES; DALE JOHNSON; and ESTATE OF MARGARET ST. AUBIN, by and through MARK ST. AUBIN, Personal Counsel,<br><br>*Defendants/Counter-Plaintiffs*<br><br>v.<br><br>PRIME PROPERTY & CASUALTY INSURANCE COMPANY, an Illinois Corporation; and PRIME HOLDINGS INSURANCE SERVICES, INC., an Illinois Corporation, dba CLAIMS DIRECT ACCESS<br><br>*Third-Party Defendants* | Case No. 2:2024cv00421<br><br>Judge Sheri Polster Chappel<br>Magistrate Judge Kyle C. Dudek |

### DEFENDANTS' OPPOSITION TO PRIME PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT

Third-Party Plaintiffs, Medicab Transportation, LLC ("Medicab"), Dale Johnson ("Johnson"), and Jason Rhodes ("Rhodes"), collectively (the "Medicab Defendants"), by and through their undersigned counsel, hereby file their

Memorandum in Opposition to Prime Property & Casualty Insurance Company ("PPCI") Motion to Dismiss ("Motion") the Medicab Defendants' Amended Third-Party Complaint ("Amended Complaint") as follows:

## **INTRODUCTION**

This case arises from the concerted fraudulent actions of PPCI and its sister company, Prime Insurance Company ("Prime"), carried out through their parent and holding company, Prime Holdings Insurance Services, Inc., doing business as Claims Direct Access ("CDA") in Utah. The joint efforts of PPCI and Prime, through CDA, were to reduce post-accident Medicab's available insurance coverage for an unloading accident that occurred on September 21, 2021—the St. Aubin's claim. The structure of PPCI and Prime acting through CDA for claims adjustment and investigation exemplifies a classic agent-principals relationship, a well-established legal doctrine in Florida. *See Old Republic Ins. Co. v. Von Onweller Const. Co.*, 239 So. 2d 503 (Fla. Dist. Ct. App. 1970). Despite filing multiple motions to dismiss, PPCI has not denied this agency relationship.[1] Instead, PPCI relies on mischaracterizations of the claims, asserting that the invocation of a principal-agent relationship muddles claims against Prime, PPCI, and CDA. This assertion is both legally and factually incorrect, and the Medicab Defendants' pleading

---

[1] CDA's role as the claims adjustor agent for Prime and PPCI is consistent with the corporate structure, as Prime and PPCI are subsidiaries of CDA—as admitted by David McBride in sworn testimony.

properly articulates actionable claims against PPCI.

In response to Prime's Second Amended Complaint [DE 11], the Medicab Defendants filed a Counterclaim and Third-Party Complaint against Prime and PPCI on July 15, 2024 (the "First Complaint"). [DE 17]. Both Prime and PPCI moved to dismiss the First Complaint, and this Court granted their motions, dismissing it without prejudice as a shotgun pleading (the "Order"). [DE 79].

In its Order, the Court noted that the Medicab Defendants had not provided an explanation regarding the affiliation between Prime, PPCI, and CDA. [DE 79 at 5 n. 4]. However, since filing of the First Complaint, counsel for the Medicab Defendants deposed David McBride, alleged in the Amended Complaint to be the Executive Vice-President and Corporate Attorney for CDA, in connection with a separate lawsuit. The Medicab Defendants' allegations have now been confirmed and clarified. CDA is a holding company that owns multiple subsidiary companies, including Prime and PPCI. CDA exclusively employs all adjustors and agents who act for Prime and PPCI, including, as alleged, under this agency relationship each act or omission of CDA is for and on behalf of Prime and PPCI.

The Medicab Defendants filed their Amended Complaint on December 20, 2024. [DE 80]. In response, PPCI filed its Motion requesting the Court to dismiss all claims against PPCI because (1) the Amended Complaint is a shotgun pleading, (2) all claims against PPCI fail to state a cause of action, and (3) all claims against

PPCI lack a case or controversy. [DE 82 at ¶ 4].

The Court should deny PPCI's Motion. First, asserting certain claims against Prime, PPCI, and CDA collectively does not constitute a shotgun pleading. The acts or omissions alleged in each claim were made by a common agent (CDA) and are, therefore, attributable to each entity. "The fact that [the entities] are accused collectively does not render the complaint deficient" so long as "[t]he complaint can be fairly read to aver that all [entities] are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

Second, the Fourth, Fifth, and Sixth Causes of Action meet Rule 9(b) pleading requirements and therefore properly state claims, as each cause of action alleges and incorporates particular paragraphs detailing the dates, individuals, and content of the relevant correspondences that establish the alleged misconduct and that establish that such actions are attributable to PPCI through its agent.

Third, this Court has subject matter jurisdiction to hear this case because there is a case or controversy between PPCI and the Medicab Defendants. The claims and damages brought against PPCI are not dependent on the underlying St. Aubin's claims, rather they are related to PPCI's misrepresentations and omissions and PPCI's breach of its fiduciary duty. These damages and issues are defined and concrete and are therefore ripe for decision making.

# ARGUMENT

In analyzing a 12(b)(6) motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the Counterclaim. *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 20009), *abrogated by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 132 S. Ct. 1701 (2012). "On a motion to dismiss, the burden is upon the moving party to show to a certainty that the plaintiff is not entitled to relief." *Empire Indem. Ins. Co. v.* Winsett, 2007 WL 9735051 (N.D. Fla. Aug. 24, 2007) (citing *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1581 (11th Cir. 1986)). Thus, when determining a motion to dismiss, a court must assume the truth of the allegations in the pleadings and draw all reasonable inferences from those allegations in favor of the non-moving party. *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). Applying this standard, PPCI's Motion to Dismiss must be denied.

## I. CHOICE OF LAW

A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state where the court sits. *See Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2011). In Florida, courts apply the "most significant relationship test" to determine which state's law applies to tort claims. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999 (Fla. 1980)). To evaluate which state has the most significant relationship, courts consider the following:

"(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered." *Id*. (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). "A court should evaluate these contacts according to their relative importance with respect to the particular issue." *Id*.

Here, the Medicab Defendants' injury resulted from the actions and omissions of CDA, the acting agent of Prime and PPCI. CDA, like its subsidiaries PPCI and Prime, has its principal place of business in Utah. [DE 80 at 4-6]. Thus, all of the CDA correspondences with Medicab, that create the factual basis for the Medicab Defendants' tort claims, were sent from Utah. Additionally, the endorsements prepared by CDA, while an agent for both Prime and PPCI, that purport to eliminate Medicab's coverage for Paratransit liability coverage were prepared and executed in Utah. *Id*. Exhibits 11-13 (General Change Endorsements). Moreover, PPCI, through Prime, litigated the scope of coverage under both the P&C Liability Policy and the Business Auto Policy in Utah. *Id*. at ¶ 70. Thus, Utah is the situs of the Medicab Defendants' alleged injuries as well as the situs where the conduct causing the injuries occurred.

Finally, the relationship between the parties was centered in Utah. Medicab obtained the Business Auto Policy through PPCI's Utah office. [DE 80, Exhibit 4].

Moreover, PPCI's policy was executed and issued in Utah by PPCI's Authorized Representative, Rick Lindsey.[2] *See id*. Exhibit 4 & Exhibit 6. The Business Auto Policy Receipt Form further states that PPCI conducts its business activities, including claims services, within the state where the policy was issued (Utah). *Id*. Exhibit 6 (Prime Claim 0004192). Additionally, the Receipt Form states that Medicab acknowledges it purposefully directed its actions and was transacting business within the state where the policy was issued. Therefore, Medicab consented to the jurisdiction of Utah courts. *Id*.[3] Finding that Utah is where the Business Auto Policy is issued is consistent with the facts of this case. Again, both PPCI and CDA have their principal place of business in Utah. Beyond providing coverage to insureds in Florida, neither PPCI, nor its agent, CDA, conducts its business activities within the state. Accordingly, Utah law governs the Medicab Defendants' tort claims against PPCI. Regardless, as explained below, the Amended Complaint properly pleads all claims under Utah and Florida law.

---

[2] PPCI alleges the policy was executed, bound, and delivered in Florida. However, the Medicab Defendants dispute PPCI's claim. The fact that the policy was delivered to Florida is not dispositive. "The determination of where a contract was executed is fact-intensive, and requires a determining of where the last act necessary to complete the contract was done." *Pastor v. Union Cent. Life Ins. Co.*, 184 F.Supp. 2d 1301, 1305 (S.D.Fla. 2002). Here, the Business Auto Policy does not state that the policy is executed or issued upon the delivery of the policy. Rather, the policy clearly sets the issuance date as May 13, 2021, with the signature of the Authorized Representative. Thus, the signature was the last necessary act.

[3] PPCI's use of the facially vague language "within the state where the Policy is issued" is intentional. The language is to present an appearance of compliance with Florida Consent Orders, which prohibits PPCI from issuing form filings seeking to allow coverage litigation exclusively in Utah. [DE 80 at ¶¶ 11-14].

## II. THE AMENDED COMPLAINT IS NOT A SHOTGUN PLEADING.

PPCI characterizes the Amended Complaint as the fourth type of shotgun pleading identified in *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015). However, this characterization is incorrect. Each of the counts allege—or incorporate particular paragraphs that allege—the existence and purpose of ab agency whereby CDA's employees and officers acting simultaneously for both Prime and PPCI performed all claims adjustment services. Thus, the actions of CDA employees and officers are attributed to all three entities as David McBride has confirmed is the reality. Accordingly, the Medicab Defendants' Amended Complaint provides fair notice to Prime for shotgun pleading purposes.

The fourth type of shotgun pleading is "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. Courts disprove this type of shotgun pleading because it makes it "virtually impossible to determine which factual allegations the plaintiff intends to use against each defendant." *Norris v. Honeywell Int'l, Inc.*, No. 8:22-CV-1675-CEH-TGW, 2023 WL 6256183, at *3 (M.D. Fla. Sept. 26, 2023) (citing *Worldspan marine In. v. Comerica Bank*, No. 20-11646, 2021 WL 5882006, *2 (11th Cir. Dec. 13, 2021)). However, *Wieland* does not prohibit all instances where a count lodges a claim against multiple defendants, "but rather only where

such a claim fails to provide defendants with adequate notice of the claims against them." *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1140 (M.D. Fla. 2018). "Therefore, a complaint must allege the acts or omissions attributed to each defendant." *Norris*, 2023 WL at *4 (citing *Albertelli*, 317 F. Supp. at 1139).

The Amended Complaint allege the acts or omissions attributed to each defendant. First, each count alleges—or incorporate specific paragraphs that allege—that only CDA's officers and employees acted to perform claims adjustment services and handle the St. Aubin's claim on behalf of both Prime and PPCI (consistent with recent sworn testimony) and therefore the actions and decisions of these individuals are attributable to each entity. *See* [DE 80 at ¶¶ 107, 113, 120-121]. Second, each claim alleges—and incorporates paragraphs that allege—specific acts or omissions of these CDA's officers and employees for Prime and PPCI. *See id*. at ¶¶ 106, 108-09, 112, 114, 120-21.

PPCI's attempt to feign confusion is unpersuasive. In fact, despite PPCI alleging that it does not know what "alleged activities were supposedly undertaken specifically by PPCI or precisely what misrepresentations it allegedly made," PPCI acknowledges that each of the subject claims allege that PPCI, CDA, and Prime acted uniformly through a common agent and that each entity should be held accountable for the actions and omissions of their common agent. *See* [DE 82 at 7]. PPCI has thus demonstrated its ability to understand the claims and

factual allegations asserted against it, which is the true test for whether a complaint is a shotgun pleading. The claims brought against PPCI are not confusing or unclear. PPCI's frustration that it must be held liable for the acts of its agent does not make the subject claims a shotgun pleading.

Additionally, PPCI's emphasis that CDA, Prime, and PPCI are separate entities is irrelevant. A party "properly pleads a cause of action against multiple defendants in one count when the allegations against both Defendants raise the same claims and relate to the same occurrences." *Woodburn v. State of Florida Dept. of Children & Family Services*, 859 F. Supp. 2d 1305, 1310 (S.D. Fla. 2012). Thus, "[n]othing in the pleading rules prohibits lodging the same claim against multiple defendants if they are all alleged to have participated in the same acts rising to the claim." *Whitehurst v. G&A Rest. Mgmt., Inc.*, No. 2:20-CV-67-MRM, 2020 WL 2062462, *2 (M.D. Fla. Apr. 29, 2020) (citing *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997)) ("When multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually.").

In short, a pleading is not a shotgun pleading if the court finds "[t]he complaint to be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). As previously established, the acts of an agent, such as an insurance adjuster, are

binding on the principal. *Old Republic Ins. Co.*, 239 So. 2d at 504. Thus, the various actions and omissions of CDA's employees and officers apply to Prime individually. The Medicab Defendants' Amended Complaint complies with this Court's Order, as it pleads sufficient factual allegations so that PPCI knows precisely what misrepresentations or other wrongdoings it allegedly made. *See* [DE 79 at 11-12].

### III. THE CLAIMS AGAINST PPCI ARE SUFFICIENTLY PLED.

PPCI seeks dismissal of the Medicab Defendants' Fourth, Fifth, and Sixth Causes of Action, arguing that the claims fail to state claims upon which relief can be granted. Regarding the Fourth Cause of Action (Breach of Fiduciary Duty), PPCI asks the Court to reconsider its Order, in which the Court found that the Medicab Defendants sufficiently stated a claim against PPCI, solely because the Amended Counterclaim allegedly does not specify how PPCI breached its independent duty to Medicab. [DE 82 at 11]. This is not true. The Medicab Defendants have alleged facts, based on the acts and omissions of PPCI's agents, to establish that PPCI failed to, among other things, act in Medicab's best interest by agreeing with Prime and CDA to limit Medicab's unloading coverage to a $100,000 limit and failing to reasonably settle the St. Aubin's claim. *See* [DE 80 at 106-09].

Regarding the Fifth and Sixth Causes of Action (Misrepresentation and

Nondisclosure & Negligent Misrepresentation and Nondisclosure), PPCI argues that the Medicab Defendants fail to allege a false statement of fact as to PPCI with particularity, as required by Rule 9(b). [DE 82 at 14]. Again, however, PPCI's argument fails because all misstatements and omissions were by CDA, the sole actor, and were done as PPCI's and Prime's joint agent. The fact that they apply equally to CDA and Prime is irrelevant. The Fifth and Sixth Causes of action not only state the factual allegations attributed to PPCI through its common agent, they also incorporate specific paragraphs detailing dates, individuals, the substantive nature of correspondence, and 27 attachments containing copies of documents in compliance with Rule 9(b).[4] Thus, all claims directed at PPCI are claims upon which relief can be granted and PPCI's Motion must be denied.

PPCI emphasizes that it is not a party to Prime's P&C Liability Policy and it has tendered the $100,000 limit of its Business Auto Policy. PPCI argues it has not breached its fiduciary duty, nor has it made a false statement under its Business Auto policy. The Medicab Defendants dispute that these facts are sufficient to be dispositive of whether PPCI has breached its fiduciary duty or made misrepresentations or nondisclosures. PPCI's participation in breach of fiduciary duty and fraud, through CDA, is detailed and tendering a policy limit is not a

---

[4] It is important to note that PPCI has not alleged that any of the incorporated paragraphs contain immaterial facts not connected to any particular cause of action.

liability insurer's sole responsibility. *See Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 676 (Fla. 2004) (an insurer's agreement to pay the policy limits does not preclude a finding of bad faith). Further, PPCI's arguments are ultimately unavailing at this stage. A party need not prove their claim in their pleadings, "but must include enough facts 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 955 (2007)).

A. <u>Breach of Fiduciary Duty.</u>

The elements of a claim for breach of fiduciary duty are: "the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1337 (S.D. Fla. 2018) (quoting *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002)). Here, PPCI does not dispute that there existed a fiduciary relationship and duty between PPCI and Medicab. Rather, PPCI alleges that the Fourth Cause of Action does not contain a statement of "how specifically PPCI breached its independent duty to its insured." [DE 82 at 11]. This is false. Generally, an insurer "owes a duty to its insured to defend and to negotiate or settle in good faith. *See Allstate Ins. Co. v. Am. S. Home Ins. Co.*, 680 So. 2d 1114, 1116 (Fla. Dist. Ct. App. 1996) (citing *Ranger Ins. Co. v. Travelers Indem. Co.*, 389 So.2d 272 (Fla. 1st DCA 1980)). "This fiduciary obligation

is imposed on an insurer because the insured surrenders to the insurer all control over handling a claim, including all decisions with regard to the litigation and settlement. In return, the insurer assumes a duty to exercise control of the claim and to make decisions with due regard for the interests of the insured."

The Fourth Cause of Action sets forth facts that plausibly allege that PPCI breached its duty to defend and negotiate in good faith and to make decisions with due regard for Medicab's interests. First, it clearly asserts that Prime and PPCI, as sister companies, acted uniformly through their common agent, CDA, their parent company, to reduce the available limits and thereby defeat reasonable settlement. [DE 80 at 107]. By acting in concert with Prime through CDA, PPCI misrepresented to Medicab that its coverage was limited to $100,000, that acknowledging this limit was in Medicab's best interest, and omitting that Prime and PPCI, through CDA, would fabricate false and fraudulent endorsements to retroactively reform Medicab's policies. *Id.* at ¶¶ 41, 44-46, 51-53, 58, 89, 109. These actions, carried out by CDA, were not made with due regard for Medicab's interests. Additionally, PPCI and Prime, through their common agent, collectively concluded and communicated to the St. Aubin Estate that the applicable policy limits were only $100,000, thereby failing to reasonably and timely settle the St. Aubin claim. *Id.* at ¶¶ 109-10. PPCI cannot merely tender its policy limits and wash its hands of any wrongdoing.

Critically, this Court has already acknowledged that the Medicab Defendants have stated a cause of action against PPCI for breach of fiduciary duty. [DE 79 at 21] ("[T]o the extent Medicab alleges that PPCI was somehow complicit in Prime's actions—taken to avoid $1 million in potential liability for the St. Aubin claim—it also states a claim against PPCI."). PPCI's arguments that (1) it is not a party to the P&C Liability Policy and (2) it has tendered its policy limits under the Business Auto Policy are not a basis to alter the Court's prior Order. PPCI's arguments do not address the sufficiency of the claims alleged but instead merely state a disagreement with the Court's prior ruling.

In summary, the Medicab Defendants allegations are not conclusory and raise a right to relief above the speculative level. Therefore, PPCI's Motion to dismiss must be denied. *See Centex Homes v. Mr. Stucco, Inc.*, No. 8:07-CV-365-T-27MSS, 2007 WL 2264622, *2 (M.D. Fla. Aug. 6, 2007)

B. <u>Misrepresentation, Negligent Misrepresentation, and Nondisclosure</u>.

PPCI's Motion argues that the Fifth and Sixth Causes of Action must comply with the pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. To meet this standard, "the complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the

alleged fraud." *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 389 F. Supp. 3d 1137, 1143 (S.D. Fla. 2018). PPCI does not argue that the allegations asserted in the Amended Complaint fail to meet Rule 9(b) requirements. PPCI alleges solely that the Fifth and Sixth Causes of Action fail to associate any false statement to PPCI specifically. [DE 82 at 14]. This is not true.

To start, the Medicab Defendants allege that CDA, the parent company to Prime and PPCI, was the sole actor and that its simultaneously provided claims adjustment services to Prime and PPCI for the injury claim brought by the St. Aubin Estate. [DE 80 at ¶¶ 9, 107, 113]. The Medicab Defendants identify multiple CDA employees and officers, including Mr. McBride, Ms. Hardin, and Mr. Brown, who acted as agents for Prime and PPCI simultaneously. *Id.* at ¶¶ 11, 36, 39, 107, 109, 113. The Medicab Defendants also allege specific misrepresentations and omission made by CDA, primarily through Hardin, in multiple correspondences between August 1, 2022, and May 18, 2023. These include representations that Medicab's coverage for the underlying accident was limited to $100,000, that acknowledging this limit was in Medicab's best interest, and omissions regarding the creation of false and fraudulent endorsements to retroactively reform Medicab's policies. *Id.* at ¶¶ 41, 44-46, 51-53, 58, 89, 109, 114, 121.

The fact that these misrepresentations and omissions apply to both PPCI and Prime through their common agent, even though they are distinct business

entities with separate insurance policies, is irrelevant. "All knowing participants in a fraudulent scheme are legally liable for the actions of an individual who acts to carry out the scheme." *State Farm Mut. Auto. Ins. Co. v. Brown*, No. 16-80793-CIV, 2017 WL 1291995, *6 (S.D. Fla. Mar. 30, 2017) (quoting *United States v. Gonzalez*, 404 Fed.Appx. 403, 405 (11th Cir. 2010)) (cleaned up). "Indeed, a complaint need only provide sufficiently detailed descriptions of the misrepresentations made by other defendants with whom the defendant is affiliated so as to allege that there is adequate evidence to connect him to the scheme." *Id.* (quoting *Metrahealth Ins. Co. v. Anclote Psychiatric Hosp., LTD.*, No. 960CV-2547, 1997 WL 728084, at *3 (M.D. Fla. Oct. 23, 1977)) (cleaned up). Here, the Medicab Defendants' pleadings establish with particularity PPCI's decision to act in concert with its sister company, Prime, through the misrepresentations and nondisclosures made by their shared agent. Additionally, the Medicab Defendants specifically allege that these misrepresentations and nondisclosures are attributable to PPCI. Accordingly, the Fifth and Sixth Causes of Action meet Rule 9(b)'s heightened pleading standards and state claims upon which relief can be granted.[5]

## IV. THE COURT HAS SUBJECT MATTER JURISDICTION.

---

[5] This argument is closely intertwined with the shotgun pleading argument, as long as each defendant is identified and the conduct is attributed to each defendant, the complaint should not be dismissed for either reason. *See State Farm Mut. Auto. Ins. Co*, 389 F. Supp. 3d at 1144-47.

PPCI attempts to dismiss all claims against it merely because it has not contested coverage under its Business Auto Policy. [DE 82 at 15]. PPCI alleges that because it has not contested coverage, a case and controversy does not exist. *Id.* This is neither relevant nor true. To be clear, the Medicab Defendants do not bring a declaratory judgment claim against PPCI to declare its duty to defend or insure Medicab under the Business Auto Policy. *See Axis Surplus Ins. Co. v. Contravest Const. Co.*, 921 F. Supp. 2d 1338, 1343-44 (M.D. Fla. 2012) (A justiciable controversy did not exist for a declaratory judgment action because insurer had not yet denied any coverage). Nor are the claims against PPCI bad faith claims. *See D'Agostino v. Safeco Ins. Co. of Illinois*, 669 F. Supp. 3d 1187, 1189 (N.D. Fla. 2023) (Bad faith actions do not accrue until underlying issues of liability and damages are resolved). The Medicab Defendants'' claims against PPCI are for acts or omissions made by PPCI, through CDA, that have already harmed the Medicab Defendants, regardless of the outcome of the St. Aubin's claim, and which have resulted in a breach of PPCI's fiduciary duty to Medicab.

PPCI's argument relies on the ripeness doctrine under Article III of the United States Constitution. Generally, under the ripeness doctrine, "courts must resolve whether there is sufficient injury to meet Article III's requirement of a case or controversy and if so, whether the claim is sufficiently mature, and the issues

sufficiently defined and concrete, to permit effective decision making by the Court." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).

The Court has subject matter jurisdiction because claims against PPCI are based on its breach of fiduciary duty, misrepresentations, and nondisclosures, independent of the St. Aubin claim. The Medicab Defendants allege real and immediate injury resulting from PPCI's misrepresentations and omissions through its agent. These damages include PPCI, Prime, and CDA fraudulently created endorsements to falsely reflect that Prime's policies do not cover claims arising from the "use or operation of vehicles." [DE 80 at ¶¶ 109, 114]. Medicab has been injured as it paid premiums for such coverage. *Id.* at ¶¶ 31, 54, 109, 114.

Additionally, Medicab was harmed by misrepresentations and omissions because it refrained from taking action in the Utah DJ. *Id.* at ¶¶ 116, 121. Medicab has also incurred significant costs in retaining counsel to defend its policies against fraudulent attempts to retroactively modify them. *Id.* at 43, 47, 49. Meanwhile, Prime and PPCI, acting through their common agent CDA, continue to refuse to reasonably settle the St. Aubin claim by limiting the available coverage to $100,000. *Id.* at ¶¶ 89, 92, 109. These actions collectively constitute PPCI's breach of its fiduciary duty to Medicab by acting in concert with CDA and Prime, failing to act with due regard for Medicab's interests. As a result, Medicab has suffered

significant damages due to its reasonable reliance on Prime, CDA, and PPCI's actions, with the full amount of damages to be established at trial.

In short, the Medicab Defendants have pled injury and damages that are not dependent on PPCI's tender of limits. Additionally, PPCI continues to dispute that it has breached its fiduciary duty, meaning that the dispute between PPCI and the Medicab Defendants is definite and concrete. Thus, this Court has subject matter jurisdiction, and PPCI's Motion must be denied.

## CONCLUSION

Based upon the foregoing, PPCI's Motion to Dismiss should be denied.

DATED January 24, 2025.

                                 */s/ Gary D. Rhodes*
                                 Gary D. Rhodes, Esq.
                                 Florida Bar Number: 121653
                                 Henderson, Franklin, Starnes & Holt, P.A.
                                 Attorneys for Medicab Defendants
                                 1715 Monroe Street
                                 Fort Myers, FL 33901
                                 Telephone: (239) 344-1364
                                 gary.rhodes@henlaw.com
                                 jackie.navarrete@henlaw.com

                                 Alan C. Bradshaw, #4801 (*Pro Hac Vice*)
                                 Trent E. Ferrin, #18370 (*Pro Hac Vice*)
                                 **MANNING CURTIS BRADSHAW**
                                  **& BEDNAR PLLC**
                                 201 South Main Street, Suite 750
                                 Salt Lake City, UT 84111
                                 (p) 801-363-5678 | (f) 801-364-5678
                                 abradshaw@mc2b.com
                                 tferrin@mc2b.com