UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PRIME INSURANCE COMPANY, INC.,

    Plaintiff,

v.                                        Case No.:   2:24-cv-421-SPC-KCD

MEDICAB TRANSPORTATION, LLC, JASON RHODES, DALE JOHNSON, and ESTATE OF MARGARET ST. AUBIN, by and through MARK ST. AUBIN, personal representative,

    Defendants/Counterclaim Plaintiffs,

v.

PRIME INSURANCE COMPANY, INC.,

    Counterclaim Defendant,

and

PRIME PROPERTY & CASUALTY INSURANCE, INC. and PRIME HOLDINGS INSURANCE SERVICES, INC,

    Third-Party Defendants.
_____/

## **OPINION AND ORDER**

    Before the Court are two Motions to Dismiss: one filed by Plaintiff/Counterclaim Defendant Prime Insurance Company, Inc. ("Prime")

(Doc. 81) and one filed by Third-Party Defendant Prime Property & Casualty Insurance, Inc. ("PPCI") (Doc. 82). Defendants/Counterclaim Plaintiffs Medicab Transportation LLC, Jason Rhodes, Dale Johnson, and the Estate of Margaret St. Aubin (collectively "Medicab") filed responses in opposition. (Docs. 84, 85). The motions are ripe for review.

This is an insurance coverage dispute.[1] Medicab provides paratransit services for individuals with medical needs. In 2021, it purchased two insurance policies: a Business Auto Policy issued by PPCI and a Commercial Liability Policy issued by Prime. PPCI and Prime are sister entities, and Defendant Prime Holdings Insurance Services, Inc. (d/b/a Claims Direct Access) ("CDA") is the parent of both. The Business Auto Policy includes a per-person liability limit of $100,000, and the per-accident liability limit is $300,000. The Commercial Liability Policy has a $1 million limit. As originally drafted, both policies included language that, arguably, provided coverage for accidents related to certain vehicles. This is where the dispute arises.

On September 21, 2021, Margaret St. Aubin was on a lift being unloaded from a Medicab van when she fell and injured her back. As a result, her estate filed a personal injury lawsuit in Lee County Circuit Court against Medicab.

---

[1] The Court accepts the well-pleaded facts in the counterclaim as true and construes them in the light most favorable to the counterclaimant. *United States v. Jallali*, 478 F. App'x 578, 579 (11th Cir. 2012). For background purposes, the Court also draws facts from the second-amended complaint. (Doc. 11).

2

In turn, Medicab sought coverage under its policies with Prime and PPCI. PPCI does not seem to dispute coverage under the Business Auto Policy, but Prime has been less compliant. Despite the Commercial Liability Policy's language seemingly extending coverage for the incident, Prime felt the parties never intended for this policy to extend coverage for accidents related to vehicles. So Prime, acting jointly with CDA and PPCI, tried to retroactively reform the Commercial Liability Policy to exclude coverage.

As alleged, various agents, acting on behalf of CDA, Prime, and PPCI simultaneously, represented to Medicab on numerous occasions that the Commercial Liability Policy should have never covered auto accidents. On that basis, these agents sought Medicab's consent to retroactively reform the policy to exclude the contractual language extending coverage, calling it a "mutual mistake." But Medicab never agreed. So in November 2022, Prime pursued a Declaratory Judgment in Utah seeking confirmation that: (1) the Commercial Liability Policy did not conform to the parties' intent due to mutual mistake; (2) the Commercial Liability Policy is reformed to reflect the agreement of the parties; and (3) that there is no coverage under the Commercial Liability Policy for St. Aubin's claim. Medicab did not contest the suit, and the Utah court entered final default judgment in Prime's favor in March 2023. Prime domesticated the judgment in Lee County, Florida on October 31, 2023.

Prime now brings this declaratory action seeking essentially the same relief. It asks the Court to adjudicate its rights under the Commercial Liability Policy, declare that the Commercial Liability Policy does not cover the St. Aubin claim, and declare that it has no duty to defend Medicab against the St. Aubin claim. (Doc. 11).

In response, Medicab filed an amended counterclaim against Prime along with a third-party complaint against PPCI and CDA. Medicab brings counterclaims for breach of contract (count I), breach of the covenant of good faith and fair dealing (count II), and declaratory judgment (count III) against Prime, along with claims for breach of fiduciary duty (count IV), misrepresentation and nondisclosure (count V), and negligent misrepresentation and nondisclosure (count VI) against Prime, PPCI, and CDA. The crux of the first three claims against Prime is that it breached the Commercial Liability Policy by failing to provide coverage (under the policy's original terms). As for the latter three claims, Medicab argues various agents, acting on behalf of CDA, Prime, and PPCI through an agency relationship, committed various torts when they repeatedly misrepresented to Medicab and the Utah court that the Commercial Liability Policy did not cover the accident. (Doc. 80).

Prime and PPCI move to dismiss Medicab's claims.[2] Both argue that the amended counterclaim/third-party complaint is a shotgun pleading and that Medicab fails to satisfy Federal Rule of Civil Procedure Rule 9(b)'s heightened pleading standard for fraud claims.  PPCI also moves to dismiss the breach of fiduciary duty claim for failure to state a claim and lack of standing.  (Docs. 81, 82).  Because both motions to dismiss attack the same operative pleading, unless otherwise noted, the Court addresses them together.

The Court first takes on the shotgun pleading argument.  Together, Federal Rules of Civil Procedure 8 and 10 lay out the minimum pleading requirements.  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  And each "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  Violations of these rules can create shotgun pleading problems. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015).  The problems largely being that shotgun pleadings do not "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

In the Eleventh Circuit, a complaint is a shotgun pleading if it:

---

[2] Medicab named CDA as a third-party defendant for the first time in the amended third-party complaint.  (Doc. 80).  To date, it does not appear Medicab has served CDA.

5

> (1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) fails to separate into a different count each cause of action; or (4) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019) (citing *Weiland*, 792 F.3d at 1322–23). PPCI and Prime point to the fourth kind.

PPCI and Prime argue that in counts IV through VI, Medicab commits "the relatively rare sin of asserting multiple claims against multiple defendants without specifying" the claims against each defendant. *Weiland*, 792 F.3d at 1323, 1324 n.17. The Court disagrees. As noted in the Court's prior Order, "nothing in the pleading rules prohibits lodging the same claim against multiple defendants if they are all alleged to have participated in the same acts rising to the claim." *Schmidt v. Disney Parks, Experiences & Prods., Inc.*, 721 F. Supp. 3d 1314, 1323 (M.D. Fla. 2024) (cleaned up and citation omitted). This is precisely what Medicab does here.

In counts IV through VI, Medicab alleges that PPCI, Prime, and CDA made various misrepresentations about the scope of coverage under the Commercial Liability Policy. Each misrepresentation or omission was issued by an agent acting on behalf of Prime, CDA, and PPCI. CDA is the parent of

6

Prime and PPCI. Through an alleged agency relationship, each purported misrepresentation is attributable to all three parties. "Complaints that attribute the same actions to multiple defendants whom it alleges operate jointly have been found to provide fair notice to defendants for shotgun pleading purposes." *Norris v. Honeywell Int'l, Inc.*, No. 8:22-CV-1675-CEH-TGW, 2023 WL 6256183, at *4 (M.D. Fla. Sept. 26, 2023) (finding no shotgun pleading when the plaintiff "adequately convey[ed] a theory of collective liability" between a parent corporation and its subsidiary regarding a vaccine policy); *see also Schmidt*, 721 F. Supp. 3d at 1323 (finding no shotgun pleading when the plaintiff alleged all defendants were part of an "integral enterprise"); *Marino v. Spizzigo Enters., L.L.C.*, No. 20-24391-CIV, 2021 WL 8894429, at *7 (S.D. Fla. Feb. 3, 2021) (finding no shotgun pleading when the plaintiff alleged that two defendants were "owned and/or controlled, directly or indirectly by" a third defendant). Such is the case here. Prime and PPCI are free to dispute the agency relationship, but the Court is unpersuaded that they lack notice of the claims against them.

Prime also argues counts I through III constitute shotgun pleading because they are "so intertwined" with the allegations in counts IV through VI. In other words, because counts IV through VI are shotgun, in Prime's view, the same must be true for counts I through III. But this argument is easily rejected since the Court finds counts IV through VI are not shotgun pleadings.

7

Next, Prime and PPCI contend that counts IV through VI fail to satisfy Rule 9(b)'s heightened pleading standard. A plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). These circumstances include "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statements; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud." *Fortson v. Best Rate Funding, Corp.*, 602 F. App'x 479, 483 (11th Cir. 2015) (cleaned up). A complaint against multiple defendants must allege facts about each defendant's participation in the fraud. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Medicab satisfies this standard.

For each allegation of fraud, Medicab alleges the speaker, which entity that speaker was acting on behalf of, what was stated (and, if pertinent, what document the statement was made in), and when the statement was made. For example, at one point Medicab alleges that Brittany Hardin, Vice President-Claims at CDA, was assigned to act as the defense adjuster for both Prime and PPCI; that as the defense adjuster, Hardin owed Medicab a fiduciary duty to act in their interests; that Hardin was nevertheless being directed to take fraudulent action inconsistent with CDA's, PPCI's, and Prime's fiduciary duties to Medicab; that on August 1, 2022, she sent an email containing false statements that Medicab's intent and understanding was that the Commercial

Liability Policy did not cover its use of autos; and that the false statement was prepared by CDA on behalf of PPCI and Prime. (Doc. 80 ¶¶ 36–43).

In another instance, Medicab alleges that on August 20, 2022, Andrew D. Wright sent a letter on behalf of CDA, Prime, and PPCI, includes the language of the letter, and explains the letter misrepresents the terms of the Commercial Liability Policy by omitting key language. (*Id.* ¶¶ 53–60).

These allegations, and others like them, provide the who, what, when, where, and how of the alleged misrepresentations. This satisfies Rule 9(b). *See Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1343 (M.D. Fla. 2019), *aff'd sub nom.*, 32 F.4th 1298 (11th Cir. 2022) (explaining "claims of fraud must be pled with particularity, which means proffering the who, what, when, where, and how of the fraud alleged").

Attempting to revive a previously rejected argument, PPCI also maintains that Medicab fails to state a claim for breach of fiduciary duty. In its prior Order, the Court already found Medicab plausibly stated such a claim. (Doc. 79 at 21). Recognizing this, PPCI asks the Court to reconsider this holding. But PPCI does not proffer any reason why the Court should revisit an issue it already determined. So the Court declines to do so.

Finally, PPCI argues Medicab lacks standing to bring counts IV through VI against it. It broadly asserts that no live dispute exists between PPCI and Medicab because PPCI is not disputing coverage under the Business Auto

9

Policy. This might be persuasive if Medicab's claim against PPCI was breach of the Business Auto Policy, but it is not. Medicab's case against PPCI hinges on its belief that various agents acting on PPCI's behalf (through an agency relationship with CDA and Prime) misrepresented the scope of coverage under the Commercial Liability Policy. Accepted as true, a case and controversy exists.

There is one more matter to address: choice of law. In its prior Order, the Court established that Utah law applies to Plaintiff's contractual claims against Prime. However, the Court ordered additional briefing with respect to the governing law for Medicab's tort claims. (Doc. 79 at 17 n.10). Although the parties' briefing is largely inadequate, the Court finds Utah law applies.

"A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Florida applies the "most significant relationship test" to determine the governing law for tort claims. *Id.* Utilizing this test, courts consider four primary factors: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *Id.* These factors weigh in favor of Utah law.

Medicab's tort claims are all based on purported misrepresentations Prime, PPCI, and CDA made about the scope of coverage under the Commercial Liability Policy. Prime, PPCI, and CDA issued these purported misrepresentations from Utah, which is where they operate their businesses. Additionally, the relationship between the parties is centered in Utah. This relationship is reflected in the Policy Receipt Form and Coverage Conditions Summary in which Medicab acknowledged that Prime conducts its business activities in Utah, Medicab purposefully directed its actions to procure coverage into Utah, and that by entering into the policy, Medicab is transacting business in Utah. (Doc. 80-5 at 2). These factors weigh in favor of Utah law. *Cf. Doe v. Roe*, No. 20-14456, 2022 WL 1447378, at *3 (11th Cir. May 9, 2022) (finding the significant relationships favored New York for fraud claims because it is where the parties entered the underlying agreement and where the misrepresentations were made).

Prime and PPCI counter that Florida law should apply because Medicab is based in Florida and because Florida is where St. Aubin's underlying injury occurred (for which Medicab seeks coverage). But the four factors of the most significant relationship test "are considered according to their relative importance with respect to the particular issue." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (internal quotation marks and citation omitted). St. Aubin's incident is irrelevant to Medicab's tort claims, which

11

involve Prime, PPCI, and CDA's false statements about coverage. These representations did not turn in any way on St. Aubin's injury. Rather, it was Prime, PPCI, and CDA's alleged misconstruction of the Commercial Liability Policy generally and attempt to rewrite it that make Medicab cry foul. So Prime and PPCI's arguments are unmoving, and the Court finds Utah law applies to Medicab's tort claims.

Accordingly, it is

**ORDERED:**

Prime and PPCI's motions to dismiss (Docs. 81, 82) are **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on April 23, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

12