UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PRIME INSURANCE COMPANY, INC.,

    Plaintiff/Counterclaim Defendant,

v.                                                             Case No.:   2:24-cv-421-SPC-KCD

ESTATE OF MARGARET ST. AUBIN, by and through MARK ST. AUBIN, personal representative,

    Defendant,

MEDICAB TRANSPORTATION, LLC, JASON RHODES, and DALE JOHNSON,

    Defendants/Counterclaim Plaintiffs,

v.

PRIME PROPERTY & CASUALTY INSURANCE, INC.; and PRIME HOLDINGS INSURANCE SERVICES, INC, d/b/a CLAIMS DIRECT ACCESS

    Third-Party Defendants.
_____/

# OPINION AND ORDER

Before the Court is Third-Party Defendant, Prime Holdings Insurance Services, Inc. d/b/a Claims Direct Access' ("CDA") Motion to Dismiss.

Defendant/Counterclaim Plaintiff Medicab Transportation, LLC ("Medicab") filed a response in opposition. (Doc. 111). For the reasons below, the Court grants the motion.

### A. Background

The Court is familiar with the facts in this case. (Doc. 79). Only the relevant facts are discussed here. Plaintiff Prime Insurance Company Inc. ("Prime") filed a declaratory judgment in this Court to adjudicate its rights under the Commercial Liability Policy, one of two insurance policies relevant to this action. (Doc. 11). Prime seeks a declaratory judgment that the Commercial Liability Policy does not cover a claim brought by Defendant Estate of Margaret St. Aubin ("Estate") against Medicab as well as Defendant/Counterclaim Plaintiffs Dale Johnson and Jason Rhodes (collectively, "Medicab Defendants").

Medicab Defendants filed their original counterclaim against Prime and a third-party complaint against Prime Property and Casualty Insurance Co. ("PPCI") on July 17, 2024. (Doc. 17). The Court entered a Case Management and Scheduling Order which required joinder of parties and amended pleadings to be filed by November 1, 2024. (Doc. 47).

The Court dismissed Medicab Defendants' original counterclaim against Prime and PPCI in part as a shotgun pleading. (Doc. 79). Medicab Defendants then filed an amended counterclaim on December 20, 2024, against Prime, as

2

well as a third-party complaint against PPCI and, for the first time, CDA. (Doc. 80). Medicab Defendants bring counterclaims for breach of contract (count I), breach of the covenant of good faith and fair dealing (count II), and declaratory judgment (count III) against Prime only, along with claims for breach of fiduciary duty (count IV), misrepresentation and nondisclosure (count V), and negligent misrepresentation and nondisclosure (count VI) against Prime, PPCI, and CDA. (*Id.*). CDA is the alleged parent company of Prime and PPCI. (Doc. 111 at 10). CDA moves to dismiss on two theories: improper joinder and untimely service of process. The Court analyzes each in turn.

### B. Analysis

First, the improper joinder argument. CDA argues Medicab Defendants joined it after the November 1, 2024, deadline to add parties, which is too late. (Doc. 47). In response, Medicab Defendants argue the Court implicitly permitted the joinder when the Court granted leave to amend the original counterclaim. (Doc. 111). Medicab Defendants' argument is incorrect. The Court granted Medicab Defendants leave to amend their counterclaim to fix the errors that rendered it a shotgun pleading. The Court did not authorize the addition of new claims against the existing parties, let alone the addition of a new party.

"[T]he decision to permit a third-party action . . . is within the Court's discretion." *In the Matter of Suntex Marina Invs., LLC*, No.

219CV00080SPCMRM, 2021 WL 397357, at *2 (M.D. Fla. Jan. 19, 2021) (citing *Cincinnati Specialty Underwriters Ins. v. Code 3 Sec. & Prot. Servs., Inc*, No. 8:16-CV-127-T-30TBM, 2016 WL 2759152, at *5 (M.D. Fla. May 12, 2016)), *report and recommendation adopted sub nom.*, No. 219CV00080SPCMRM, 2021 WL 391331 (M.D. Fla. Feb. 4, 2021); *see also Van Voorhis v. Hillsborough Bd. of Cnty. Commissioners*, No. 8:06-CV-1171-T-TBM, 2008 WL 11440528, at *1 (M.D. Fla. Mar. 25, 2008). Timeliness is a basis to deny impleader of a party. *See, e.g.*, *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 682–83 (N.D. Ga. 2007); *King v. Livent, Inc.*, 161 F. App'x 116, 118 (2d Cir. 2005) (finding that the district court did not abuse its discretion to deny defendant's impleader where there was "knowledge of facts upon which to move for third-party joinder months prior to their motion.").

"District courts are required to enter a scheduling order that limits the time to . . . join other parties and to amend the pleading . . . ." *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16(b)). Scheduling orders "control the subsequent course of the action unless modified by a subsequent order," *id.*, and may be modified only "upon a showing of good cause." Fed. R. Civ. P. 16(b)(2). The Rule 16 good cause standard precludes modification unless the schedule "[cannot] be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418.

4

To begin, Medicab Defendants are wrong that this Court's order dismissing its original counterclaim with leave to amend granted them *carte blanche* to add new parties under Fed. R. Civ. P. 15(a)(2). Courts in this jurisdiction have rejected arguments of this sort. *See, e.g.*, *Horsman v. Cooney*, No. 2:23-CV-1205-SPC-KCD, 2025 WL 1068790, at *4 (M.D. Fla. Apr. 8, 2025) (dismissing newly added claims because "leave was solely to rectify the pleading deficiencies in the amended complaint, not to add new claims."); *AlertPoint, LLC v. Olds,* No. 1:18-CV-03879-ELR, 2021 WL 1778033, at *4 (N.D. Ga. Mar. 30, 2021) (rejecting plaintiff's argument that addition of a new claim was impliedly authorized under Rule 15(a)(2)); *Hooker v. Off. of Pers. Mgmt. & Dep't of Veteran Affs.*, No. 8:20-CV-1248-WFJ-CPT, 2021 WL 372827, at *3 (M.D. Fla. Feb. 3, 2021) ("The order dismissing the initial complaint with leave to amend does not grant leave to add totally new claims.").

Medicab Defendants' argument that the Court's order authorized them to add parties is unavailing. Medicab Defendants cite the Court's direction that "Medicab must file an amended complaint on or before December 20, 2024" as the plain language granting them leave to join CDA. (Doc. 79 at 30). Nothing in that language or any other part of the Court's order mentions leave to add new parties. And Medicab Defendants' argument that leave to join CDA was implicitly granted is refuted by the cases cited above. The Court ordered that the errors it identified be corrected; it did not sua sponte amend all

5

discovery deadlines to allow Medicab Defendants free rein to sue new parties and add new claims. None of the cases cited suggest that interpretation of the Court's order is reasonable.

Because Medicab Defendants were not granted leave to add CDA past the deadline, they must show good cause under Fed. R. Civ. P. 16(b)(4) to do so. *See Horsman,* 2025 WL 1068790, at *4 (citing *Sosa*, 133 F.3d at 1419). They do not. Medicab Defendants had information about CDA in their possession before joining them in this lawsuit. The original counterclaim and third-party complaint: (1) explicitly names CDA; (2) says that CDA is "affiliated with Prime and PPCI"; (3) names a CDA employee it claims was the "assigned defense adjuster" for the liability claim against Medicab; and (4) attaches an exhibit with CDA's contact information. (Docs. 17 ¶¶ 35-37; 17-4 at 2). The original counterclaim and third-party complaint that contained this information was filed five months before Medicab Defendants added CDA to this case. Medicab Defendants' arguments fail to persuade the Court that there was a reasonable basis not to add CDA to the lawsuit before the scheduling order deadline.

Medicab Defendants first claim that good cause exists because their right to amend and add CDA only arose after the scheduling order deadline lapsed. (Doc. 111 at 9). This logic is backward. Had Medicab Defendants conducted a reasonable investigation *before* filing their original counterclaim

6

and third-party complaint, they could have both sued the right entities and pled the relationships correctly. Moreover, that argument relies on the erroneous assumption that the Court modified all scheduling deadlines when it granted leave to Medicab Defendants to fix their original counterclaim and third-party complaint. Again, the Court did no such thing.

Medicab Defendants' argument that joinder of CDA is "necessary" fares no better. (Doc. 111 at 10). Medicab Defendants claim that in a "deposition in a separate proceeding," counsel learned "the full extent of CDA's involvement" that CDA "provides adjustment services for all liability insurance policies issued by [Prime and PPCI]" and is the "parent" of Prime and PPCI. (*Id.*). Medicab Defendants also claim they "had . . . been acting diligently in discovering CDA's role." (*Id.*). This justification is insufficient. Material facts related to CDA's relationship with Prime and PPCI were known to Medicab Defendants prior to their joinder past the deadline. (Docs. 17 ¶¶ 35-37; 17-4 at 2). Despite this, Medicab Defendants did not move to amend the deadline or indicate they intended to add CDA as a party.

No argument is provided that the facts Medicab Defendants learned after the scheduling order deadline make CDA's joinder required under Fed. R. Civ. P. 19(a)(1)(A). Because Medicab Defendants provided insufficient argument and supporting authority to show that CDA is a necessary party, the

7

Court does not find good cause to permit an amendment past the scheduling order deadline.

As to prejudice, CDA's arguments are somewhat mooted, given that the discovery deadlines have been extended through an agreement of the Parties. (Doc. 115). That said, Medicab Defendants' arguments that no prejudice would be suffered by CDA is unconvincing to the Court. The Court finds that while minimal prejudice to CDA would result from their joinder at this stage, timeliness alone justifies dismissal.

Medicab Defendants' arguments that joinder was proper here as a whole are grasping. "The question of joinder is purely one of procedure and is controlled by the federal rules." *Acosta v. Smart Alabama*, LLC, No. 1:22-CV-1209-TWT, 2023 WL 2447597, at *1 (N.D. Ga. Mar. 10, 2023) (quotation omitted). Medicab Defendants did not comply with procedural deadlines set by the Court, and they have not shown that untimely joinder should be excused under Rule 16. Dismissal is therefore required.

The Court turns to service of process. CDA argues that Medicab Defendants' failure to serve them within the 90-day deadline imposed by Fed. R. Civ. P. 4(m) or the 112-day deadline imposed by the Court warrants dismissal. (Doc. 4). This argument has weight as well. CDA was not served until approximately six months from when it was added to the suit, well after both applicable deadlines. (Doc. 98). This delay is unacceptable. CDA is an

8

established corporate entity, and Medicab Defendants present no facts that service was not possible until when it occurred.

"Rule 4(m) provides for dismissal if service is not achieved within [90] days, absent either (a) good cause for a plaintiff's dilatory service or (b) a decision by the Court to exercise its discretion in favor of extending the time for service without a showing of good cause." *PNCEF, LLC v. Hendricks Bldg. Supply, LLC,* No. 09–0801, 2010 WL 1856291, at *1 (S.D. Ala. Apr. 29, 2010). "Good cause exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (cleaned up).

Medicab Defendants' arguments supporting dilatory service are unpersuasive. Service of process is not a procedural nicety of a bygone era. Rather, service "is a jurisdictional requirement: a court lacks jurisdiction over . . . a defendant when that defendant has not been served." *Pouyeh v. Pub. Health Tr. of Jackson Health Sys.*, 718 F. App'x 786, 790–91 (11th Cir. 2017) (quoting *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990)). CDA's actual notice of the lawsuit prior to service does not excuse the failure to effect service. Nor does CDA's refusal to waive service, which occurred after the deadline had expired. (Doc. 111 at 13). It is a defendant's right to be served with process before responding to a lawsuit; CDA's refusal to relinquish that

9

right is not a basis to find good cause for Medicab Defendants' delay. Finally, even if Medicab Defendants are right that no prejudice would result, that does not relieve them of their obligation to comply with deadlines set by the federal rules and the Court.

Putting aside timeliness, the parties disagree over whether service was proper. CDA argues that its registered agent in Florida was not served which it claims renders service improper under Florida law (Doc. 103 at 10). Medicab Defendants counter that CDA was properly served under Utah law, the state in which service was effected. (Doc. 110 at 115–16). The Court will assume without deciding that service was proper, as it does not alter the conclusion that service was untimely. Dismissal is therefore required by Rule 4(m).

While dismissing CDA may create delay in resolving the underlying disputes at issue in this case, that delay is the product of Medicab Defendants' failure to abide by deadlines.

Accordingly, it is **ORDERED:**

CDA's motion to dismiss (Doc. 103) is **GRANTED**.

**DONE** and **ORDERED** in Fort Myers, Florida on August 15, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

10